IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 23 C 13103 |
| v. | ) ) ) | Judge Robert W. Gettleman |
| MARK LOVEKAMP, individually and as representative of the Estate of DEBORAH LOVEKAMP, | ) ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff National Union Fire Insurance Company of Pittsburg, Pa. filed this lawsuit against defendant Mark Lovekamp, individually and as representative of the Estate of Deborah Lovekamp ("defendant"), and Schneider Electric Holdings, Inc. ("Schneider"), seeking a declaration that the Lovekamps do not qualify as insureds under a Business Auto Insurance Policy that plaintiff issued to Schneider, Mark Lovekamp's employer. Thereafter, defendant filed a motion to dismiss (which the court denied), plaintiff voluntarily dismissed Schneider, defendant filed his answer, and the parties began conducting discovery. Defendant now moves for leave to file a two-count counterclaim and to file affirmative defenses to plaintiff's complaint. Plaintiff does not oppose the motion for leave to file affirmative defenses, which the court grants. Plaintiff does, however, oppose the proposed counterclaim. For the reasons below, the court grants in part and denies in part the defendant's motion for leave to file its counterclaim.

## BACKGROUND

In September 2023, plaintiff filed its complaint. Plaintiff alleges that on November 6, 2022, Mrs. Lovekamp was riding a bicycle on Poplar Creek Trail in Hoffman Estates when Erika E. Reyes lost control of her car, veered off the road, and struck Mrs. Lovekamp—who died later that day.

Plaintiff alleges that, on information and belief, Ms. Reyes's car was insured under a Direct Auto Insurance Company auto policy with liability limits of $25,000 per person, and that Mrs. Lovekamp and the defendant carried a personal auto insurance policy from Allstate Fire & Casualty Insurance Company with underinsured motorist limits of $250,000.00 per accident.

Plaintiff further alleges that the Lovekamps owned a Kia Sportage, which was insured under a commercial auto policy owned by defendant's employer, Schneider, as part of Schneider's U.S. fleet insurance program. Plaintiff issued a Business Auto Insurance Policy to Schneider for the period from January 1, 2022, to January 1, 2023 (the "policy"). The policy provides underinsured motorist ("UIM") insurance with limits of $5 million per accident and a "UIM Endorsement" that covers damages for bodily injury that the insured is entitled to recover from an underinsured vehicle that caused the injury. The policy defines "insureds" as including an employee or his family member who is "occupying" a covered "auto."

Plaintiff asserted a single "Count I" against both defendant and Schneider seeking a declaratory judgment that the policy does not cover any damages that the Lovekamps' estate may be entitled to recover from Ms. Reyes. That is because, plaintiff alleges, neither Lovekamp qualifies as an "insured" under the policy's UIM Endorsement, as neither was "occupying" an "auto" at the time of the accident.

2

In December 2023, plaintiff voluntarily dismissed Schneider, leaving defendant as the sole defendant. That same month, defendant moved the court to dismiss the action under 22 U.S.C. § 2201 and the Wilton/Brillhart abstention doctrine. The court denied that motion.

In July 2024, defendant timely filed his answer to the complaint. And later that same month, the magistrate judge set the following discovery schedule: (1) Rule 26(a)(1) disclosures to be filed by August 7, 2024; (2) initial written discovery requests to be served by August 28, 2024; and (3) fact discovery to be completed by December 13, 2024.

At the end of October 2024, defendant filed two motions: (1) one for leave to file affirmative defenses; and (2) one for leave to file a counterclaim. The proposed affirmative defenses assert that plaintiff "waived" and is "estopped from relying" on any policy provisions that it did not provide to defendant "either during the presentation of the underinsured claim or in [plaintiff]'s denial letters." They further assert that defendant is excused from (or plaintiff is barred from receiving) performance of the policy terms that were "never provided to" defendant.

As for the counterclaim, defendant seeks to assert in counterclaim Count I a "breach of contract" claim against plaintiff and Schneider based on plaintiff's breach of the terms of the policy, and to assert in counterclaim Count II a "bad faith" claim against plaintiff, in which he seeks remedies including damages, attorney fees, and costs under 215 ILCS 5/155 for plaintiff's unreasonable and vexatious conduct in refusing to provide coverage. Defendant states that his counterclaim seeks only to bind Schneider to any judgment in this action against plaintiff.

Just before filing his motions, defendant stated in a status report that a four-month extension of the December 13 deadline "should accommodate the required discovery." The magistrate judge later extended that deadline by two months—to February 11, 2025.

**DISCUSSION**

Defendant moves to amend under Federal Rule of Civil Procedure 15(a)(2). Under that subsection, district courts may grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) is intended to reflect a liberal attitude toward the amendment of pleadings. See Foman v. Davis, 371 U.S. 178, 182 (1962). But courts have discretion to deny leave when there is undue delay, bad faith, or dilatory motive, or when allowing the amendment would result in futility or undue prejudice to the opposing party. See Park v. City of Chi., 297 F.3d 606, 612 (7th Cir. 2002). Ultimately, "the decision to allow a party to amend its pleadings is within the sound discretion of the district court." Lerman v. Turner, No. 10 C 2169, 2012 WL 1409526, at *1 (N.D. Ill. Apr. 23, 2012).

As an initial matter, the court finds that it would have jurisdiction over the proposed counterclaims. Although plaintiff does not dispute this, federal courts "have an independent duty to ensure subject-matter jurisdiction," which cannot be waived by the parties or excused by the court. Dexia Credit Loc. v. Rogan, 602 F.3d 879, 883 (7th Cir. 2010). The issue here is that defendant includes Schneider in the proposed counterclaims. Plaintiff and defendant are diverse. But Defendant alleges that Schneider is a corporation "with its principal place of business in Westmont, Illinois." Because defendant is an Illinois resident, Schneider's Illinois presence destroys diversity. The court agrees with defendant that his counterclaims are compulsory under Rule 13(a), and it finds that he may add Schneider under Rule 13(h). The court thus has supplemental jurisdiction under 28 U.S.C. § 1367(a). 28 U.S.C. § 1367(a); see Unique Concepts, Inc. v. Manuel, 930 F.2d 573, 574 (7th Cir. 1991) ("A federal court has supplemental jurisdiction over compulsory counterclaims."); see also Leipzig v. AIG Life Ins.

4

Co., 362 F.3d 406, 410 (7th Cir. 2004) ("[A] compulsory counterclaim does not require an independent grant of jurisdiction. . . . Even a permissive counterclaim, if part of the same case or controversy (a condition met here), may be brought under the supplemental-jurisdiction statute, 28 U.S.C. § 1367(a), without an independent basis of jurisdiction" (citation omitted)).

The court also finds that defendant should be granted leave to plead Count I of his counterclaim but not Count II. Defendant argues that his motion is "predicated, in part, on" plaintiff's "failure . . . to disclose the basic policy terms before Lovekamp's Answer was due." According to defendant: he "was not in possession of the Business Auto Policy" before the July 15, 2024 deadline to answer; plaintiff "did not attach the full policy to its Complaint for declaratory judgment" or "tender the full policy" before it filed the complaint; and plaintiff first "provided documents/forms purporting to be the policy without certification as to its completeness" on August 7, 2024. He further asserts that, on October 9, 2024, Schneider served documents under a Rule 45 subpoena that included a "Commercial Umbrella Policy from HDI Global Insurance Company," but that Schneider "objected to furnishing the documents comprising its Fleet Insurance Program described in" plaintiff's complaint. He also argues that this is his "first request for an amendment to the pleadings," that he made it "at the early stage of discovery," that he "diligently pursued this matter," that his "request is not made for purposes of delay," and that "no prejudice can inure to either counterclaim Defendant."

In response, plaintiff does not meaningfully argue that there is any undue delay, bad faith, or dilatory motive here, or that it would suffer any undue prejudice from the amendment. It instead contends that the "proposed breach of contract claim is duplicative" and thus futile, and that "the proposed bad faith claim is futile."

5

The court disagrees with plaintiff on the breach of contract claim but agrees with it on the bad faith claim. An amended pleading may be futile if it "merely restates the same facts using different language, reasserts a claim previously determined, fails to state a valid theory of liability, or could not survive a motion to dismiss." Guaranteed Rate, Inc. v. Rorvig, No. 22 CV 2342, 2023 WL 3652443, at *4 (N.D. Ill. May 25, 2023). Plaintiff here, as the party opposing the amendment, bears the burden to show that the amendment would be futile. See Foreman v. King, No. 12 CV 50419, 2013 WL 4482612, at *1 (N.D. Ill. Aug. 20, 2013).

Starting with the breach of contract counterclaim (Count I), plaintiff contends that courts routinely strike as "repetitious and unnecessary" a counterclaim that "merely restates an issue already before the court." Count I is just that type of counterclaim, plaintiff says, because "while [defendant]'s claim is labeled 'Breach of Contract' rather than 'Declaratory Judgment', the result and potential relief sought are the same" and "[t]he question of whether the Policy provides coverage to [defendant] is already before the Court." In reply, defendant argues that the allegations in Count I are not duplicative because they raise additional issues like: "(1) Multiple signed typewritten manuscript endorsements control over boiler plate preprinted forms . . .; (2) Financial damages are claimed for breach of contract to be determined by a jury . . .; (3) Arbitration is not available to [plaintiff] . . .; (4) 'Set offs' based on other policies are not applicable . . .; (5) The manuscript 'Other Insurance' endorsement makes the coverage primary; and (6) [defendant] also seeks to resolve all other issues allegedly reserved by [plaintiff] in its denial letter of 9-14-24."

The court finds that plaintiff has failed to show that counterclaim Count I is futile for being duplicative. First, "courts routinely permit 'an alleged insured to file counterclaims

6

demanding a declaration that the insurer was obligated to make payments to or to defend the insured'" and to also "'assert breach of contract counterclaims based on the insurance policy.'" Cont'l Cas. Co. v. Duckson, No. 11-CV-00459, 2011 WL 2293873, at *2 (N.D. Ill. Jun. 9, 2011) (quoting Emp'r Ins. of Wausau v. Pacer Int'l, Inc., No. 04 C 4563, 2005 WL 61481, at *3 (N.D. Ill. Jan. 11, 2005) (explaining that filing such counterclaims is "common practice")).  Second, as defendant argues, the breach of contract claim here is broader than the declaratory judgment claim, including defendant's request for additional damages relief.  See Fed. Ins. Co. v. Healthcare Info. & Mgmt. Sys. Soc'y, Inc., 567 F. Supp. 3d 893, 900 (N.D. Ill. 2021) ("Although the court has discretion to dismiss claims that add nothing to the case beyond the issues that plaintiff's claims raise, . . . this court generally elects not to do so, particularly when . . . the counterclaim raises issues broader than the original claims." (citation omitted)).  And finally, plaintiff has not identified any prejudice that it would suffer from allowing the counterclaim. See Cont'l Cas. Co., 2011 WL 2293873, at *2 (allowing insured to file counterclaim that demanded allegedly "equal (but opposite) relief," and noting that insurer did not identify any prejudice); VW Credit, Inc. v. Friedman & Wexler, LLC, No. 09 C 2832, 2010 WL 2330364, at *2 (N.D. Ill. Jun. 7, 2010) ("[E]ven if the counterclaim turns out to be an exact mirror image of VW Credit's claim, which seems doubtful, the fact that the counterclaim remained pending . . . would not prejudice VW Credit in the slightest.").

  Turning next to defendant's "bad faith" counterclaim (Count II), the court agrees with plaintiff that the claim is futile.  As a general matter, Illinois does not recognize any independent causes of action for "bad faith" in first-party insurance actions.  Cramer v. Ins. Exchg. Agency, 174 Ill. 2d 513, 523-27 (Ill. 1996).  Defendant bases his bad faith claim here on allegations that

7

in denying his claim, plaintiff violated various provisions of 215 ILCS 5/154.6 and of Part 919 of Title 50 of the Illinois Administrative Code. He then alleges that those violations and related conduct constitute vexatious conduct in breach of 215 ILCS 5/155, entitling defendant to recover damages, attorney fees, and costs under section 155.

As for 215 ILCS 5/154.6 and Title 50 of the Illinois Administrative Code, "Illinois courts have repeatedly held that" neither provides "a private right of action to pursue damages or equitable relief, and that enforcement of those provisions is entrusted to the Department of Insurance." Bernacchi v. First Chicago Ins. Co., No. 21-CV-2533, 2021 WL 6752292, at *2 (N.D. Ill. Aug. 10, 2021), aff'd 52 F.4th 324 (7th Cir. 2022) (dismissing claim for unreasonable delay based on alleged violations of 50 Ill. Admin. Code 919.50 and 919.40, and of 215 ILCS 5/154.6 for failure to state a claim).

As for 215 ILCS 5/155, that section 155 states:

> In any action by or against a[n insurance] company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus [additional penalties].

215 ILCS 5/155(1).

"[S]ection 155 is procedural rather than substantive." Hennessy Indus., Inc. v. Nat'l. Union Fire Ins. Co. of Pittsburgh, 770 F.3d 676, 679 (7th Cir. 2014). It provides an "extracontractual remedy to policy-holders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." Phillips v. Prudential Ins. Co. of Am., 714 F.3d 1017, 1023 (7th Cir. 2013) (quoting Cramer, 174 Ill. 2d at 519). Simply stated: "it provides a remedy in a specified type of 'action' (case); it does not create a cause of action."

Hennessy Indus., 770 F.3d at 679; see also Moles v. Ill. Farmers Ins. Co., 2023 IL App (1st) 220853, ¶ 19 ("section 155 does not create an independent tort for which an insurance company can be held liable").

Here, defendant is attempting to plead a bad faith claim based on section 155 as a separate Count II. Because section 155 does not provide for a stand-alone claim, that is procedurally suspect. See Moles, 2023 IL App (1st) 220853, ¶ 6 n.2 ("[S]ection 155 does not create an independent cause of action, so it is somewhat misleading to say that plaintiff pled a section 155 'claim.' It is more accurate to say that plaintiff sought attorney fees, costs, and statutory damages pursuant to section 155."). But ultimately what matters here is whether the section 155 claim is "connected to" a cause of action on the policy. Id. at ¶ 20. And so it is here: defendant is pleading a breach of contract claim in Counterclaim Count I. So the court need not resolve whether it would have made better sense for defendant to have pleaded its section 155 claim as part of that same Count.

As for the futility of the request for section 155 remedies, those remedies are appropriate if an insurer's actions on a claim under a policy are "vexatious and unreasonable." Cramer, 174 Ill. 2d at 519. But "an insurer's conduct is not vexatious and unreasonable if: (1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim represents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 200 F.3d 1102, 1110 (7th Cir. 2000) (internal citations omitted).

9

Plaintiff argues here that defendant's claim to section 155 relief is futile because there is a *bona fide* coverage dispute. That is because, it says, on the one hand, plaintiff asserts that "no coverage is available under the plain language of the policy," and on the other hand, defendant argues that "Illinois public policy prevents [plaintiff] from relying on the Policy's" plain language. In its reply, defendant appears to argue that several "manuscript endorsements" to the policy support that Mrs. Lovekamp is an "insured." Thus, he says, under the "Illinois rule," courts generally find that an insurance company may not deny uninsured-motorist coverage to that person. Defendant also contends that the occupancy requirement should be held unenforceable. He therefore concludes that there is no *bona fide* coverage dispute at issue.

The court agrees with plaintiff that there is a *bona fide* dispute that renders the proposed counterclaim futile. Section 155 claims may be dismissed at the pleadings stage when a *bona fide* dispute over coverage is apparent from the face of the complaint. Fed. Ins. Co., 567 F. Supp. 3d at 901. A *bona fide* dispute means "a dispute that is real, genuine, and not feigned." Phillips, 714 F.3d at 1023 (cleaned up).

It is readily apparent from the complaint here that there is a real and genuine dispute over coverage. As plaintiff suggests, defendant does not meaningfully contest that the plain language of the policy related to "occupying" an "auto" would exclude the Lovekamps—including Mrs. Lovekamp who was undisputedly riding a bicycle at the time of her accident. The court thus agrees with plaintiff that the proposed bad faith counterclaim asserting a section 155 claim is futile here. Cf. Starstone Ins. SE v. City of Chi., No. 20 CV 2475, 2021 WL 1088313, at *3-4 (N.D. Ill. Mar. 22, 2021) (dismissing section 155 counterclaim where there was a "bona fide

10

policy interpretation dispute" "based upon the plain language of the policy"). As a result, the court denies defendant leave to assert that claim.

## CONCLUSION

For the above reasons, the court grants defendant's motion for leave to file affirmative defenses to plaintiff's complaint [Doc. 35]. The court further grants in part and denies in part defendant's motion for leave to file its counterclaim [Doc. 36]. The court grants defendant leave to file its breach of contract counterclaim Count I but denies plaintiff leave to file its bad faith counterclaim Count II. The affirmative defenses and counterclaim must be filed as separate documents on the docket.

ENTER:

Robert W. Gettleman
United States District Judge

DATE: February 12, 2025